STATE of Minnesota, Respondent

v.

Jorge Daniel MORALES–
MULATO, Appellant.

No. A06–1394.

Court of Appeals of Minnesota.

Feb. 19, 2008.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Lydia Villalva Lijo, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by
PETERSON, Presiding Judge;
STONEBURNER, Judge; and WRIGHT, Judge.

## OPINION

STONEBURNER, Judge.

Appellant challenges his conviction of and sentence for first-degree criminal sexual conduct, arguing that the district court erred by (1) failing to suppress his custodial statement as a sanction for violation of his rights under article 36 of the Vienna Convention; (2) allowing the CornerHouse interviewer to opine that, based on an interview, the complainant had been sexually abused; and (3) imposing an upward sentencing departure. In a pro se supplemental brief, appellant additionally challenges the sufficiency of the evidence to support his conviction.

## FACTS

Appellant Jorge Morales–Mulato is a Mexican national who, at the time of trial in this matter, was 35 years old and had lived and worked in the United States for approximately four years. In the spring of 2004, appellant became involved in a sexual relationship with Alma Rosa Olivas, whose daughter (complainant) was ten years old. In August 2005, complainant told Olivas that appellant had sexually abused her. Olivas and complainant went to the Domestic Abuse Service Center (the center) to obtain an order for protection against appellant. The center alerted the police, and on August 23, 2005, complainant was interviewed at CornerHouse, a multi-disciplinary center. CornerHouse interviewers are trained to conduct video-taped forensic interviews of children who may have been abused or who may have witnessed a violent crime.

Appellant was subsequently arrested and taken to the police station where, with the services of an interpreter, he was questioned by Sergeant Knight, of the Minneapolis Police Department, and Lynn Hoff, a Hennepin County Child Protective Services investigator. Knight gave appellant a *Miranda* advisory through the interpreter. After stating each right, Knight asked appellant if he understood that right. When appellant indicated that he did not understand the right to remain silent, Knight restated the right until appellant indicated his understanding. Appellant said that he understood each of the remaining rights. Appellant declined an attorney and agreed to answer questions from Knight and Hoff. Appellant initially

denied having any sexual contact with complainant, but ultimately confessed to touching and penetrating complainant, including having oral sex with her once. Appellant was charged with two counts of first-degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(a) (2004), for sexual penetration and sexual contact with a person under 13 years of age by a person more than 36 months older than the complainant.

Prior to trial, appellant moved to suppress his custodial statement on the grounds that (1) he was not advised of his right to contact the Mexican Consulate, a violation of article 36 of the Vienna Convention on Consular Relations (Vienna Convention) and (2) he had not understood and therefore had not voluntarily waived his *Miranda* rights. Appellant proposed to call the director of the Mexican Capital Legal Assistance Program to testify at the suppression hearing about the differences between the legal systems in the United States and Mexico and how those differences make *Miranda* rights difficult for Mexican nationals to understand. The district court denied this request, determining that such testimony would not assist the court in this case.

The district court denied appellant's suppression motion, finding that (1) although appellant's rights under the Vienna Convention had been violated, he was not prejudiced by the violation and (2) appellant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. The recording of appellant's police interview and a transcript of the interview were admitted into evidence at trial, and the recording was played for the jury.

Prior to trial, appellant also objected to admission of complainant's videotaped CornerHouse interview. The district court withheld ruling on admission of the interview until trial, but admitted the tape

as a prior consistent statement after defense counsel attacked complainant's credibility. Although appellant did not object to the state calling the CornerHouse interviewer, Anne Nuernberg, as an expert witness, appellant did object to the state eliciting Nunernberg's opinion, based on the interview, that complainant had been sexually abused. The district court expressed concern that Nuernberg's opinion would constitute impermissible vouching. After reviewing caselaw, however, the district court concluded that it was required to admit Nuernberg's opinion that complainant had been sexually abused but could not admit a direct opinion about complainant's credibility or truthfulness.

At trial, complainant testified that appellant sexually abused her several times between 2004 and 2005 while her mother was at work. Complainant testified that appellant touched her breasts and private parts, penetrated her vagina with his fingers and penis, and penetrated her anus and mouth with his penis. Complainant also testified that she and appellant watched two movies depicting sex and violence, and that once appellant took a picture of her vagina and warned her that if she ever told about the sexual contact he would show this picture to the judge and "go free." Complainant testified that appellant brandished a pocket knife that he frequently carried and threatened to harm her, her mother, her cousins, and her grandmother.

The doctor who performed a physical examination on complainant testified that the physical examination could not confirm or negate that complainant had been sexually abused.

Nuernberg testified regarding her training and experience and described the CornerHouse interview protocol, including the criteria used by trained interviewers to assess interviews in order to make a finding that a child has or has not been

abused, or that the interview is inconclusive on this issue. After Nuernberg described the interview protocol, complainant's videotaped interview was played for the jury. Nuernberg then testified in detail about how aspects of complainant's interview met the assessment criteria and stated her opinion that complainant had been sexually abused. On cross-examination, defense counsel, whose foundation objection to Nuernberg's opinion testimony had been overruled, questioned Nuernberg about whether she had taken any classes on determining whether children are telling the truth or lying. Nuernberg said she had not, but that she had some training in "truth-detecting" based on research about children and how they disclose information, and on how to obtain accurate information from children in the interview process. When asked if her training was at the level of a psychiatrist or a PhD, Nuernberg answered, in part, that "I can form an opinion" about truthfulness.

Appellant's defense was that both he and complainant were victims of Olivas, who was angry when she learned that appellant was living with another woman throughout his relationship with Olivas. Appellant testified at trial that he only confessed to having sexual contact with complainant because, based on his experience in the Mexican military, he was afraid that he would be tortured or beaten by the police if he did not confess. He then denied that he had any sexual contact with complainant and denied that he had threatened her with his pocket knife.

In closing arguments, the prosecutor told the jury that it was up to them to decide if complainant was believable. The prosecutor made only one reference to Nuernberg as an expert who testified that in her opinion, complainant had been sexually abused. Defense counsel told the jury during closing argument that although the prosecutor had suggested that Nuernberg was "some kind of expert on whether abuse [occurred]," she had no expertise in determining whether someone is telling the truth, and stated, "[s]he's not an expert." In rebuttal, the prosecutor stated: "Nuernberg is an expert."

During deliberations, the jury requested clarification about whether Nuernberg should be considered an expert witness. Based on agreement of the parties, the district court answered the question by telling the jury that it had all of the information it needed to make that determination.

The jury found appellant guilty of both charges, and in a post-verdict sentencing proceeding found two aggravating factors: multiple acts of abuse over an extended period of time and multiple forms of penetration. Based on the jury's determination of aggravating factors, the district court imposed a 216–month sentence, a 50% upward departure from the presumptive 144–month sentence for first-degree criminal sexual conduct under the Minnesota Sentencing Guidelines. This appeal followed.

## ISSUES

I. Did the district court err in failing to suppress appellant's statement as a consequence for violation of appellant's rights under article 36 of the Vienna Convention?

II. Did admission of Nuernberg's opinion that complainant had been sexually abused constitute inadmissible vouching testimony, and if so, was admission of this testimony an abuse of discretion entitling appellant to a new trial?

III. Were the aggravating factors found by the jury a proper basis for the upward sentencing departure?

## ANALYSIS

### I. Denial of motion to suppress

█ Appellant argues that the district court erred by denying his motion to suppress his custodial statements as a sanction for violation of his rights under the Vienna Convention. Appellant also contends that because the district court did not permit him to call a witness at the suppression hearing, he was prevented from meeting his burden to show that he was prejudiced by the violation of his Vienna Convention rights. "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999).

█ Article 36 of the Vienna Convention requires that an arrested foreign national be notified that on his request, the authorities shall inform his consular official of his arrest, and must promptly forward to the consular post any arrestee's communications addressed to the consular post. *Ademodi v. State,* 616 N.W.2d 716, 718 n. 3 (Minn.2000) (quoting Vienna Convention on Consular Relations, art. 36, ¶ 1(b), Apr. 24, 1963, 21 U.S.T. 77, 100–01, 1969 WL 97928). Because it is a treaty, the Vienna Convention is the supreme law of the land and is binding on the states. U.S. Const. art. VI, cl. 2; *see also Antoine v. Washington,* 420 U.S. 194, 201, 95 S.Ct. 944, 949, 43 L.Ed.2d 129 (1975) (stating that treaties are binding on affected states under the Supremacy Clause). It is undisputed that appellant was not informed of his rights under article 36 of the Vienna Convention, and the parties stipulated that if appellant had contacted the consulate, he would have been advised against speaking to police without an attorney present.

In *State v. Miranda,* we held that violation of a detainee's right to consular notification under the Vienna Convention does not warrant suppression of a custodial statement absent a showing that the defendant was prejudiced by the violation. 622 N.W.2d 353, 356 (Minn.App.2001). Appellant argues that he demonstrated prejudice from the violation, or could have done so had the district court allowed the testimony of his proposed witness to explain why Mexican nationals may have difficulty understanding *Miranda* rights.

Conversely, the state argues that *State v. Miranda* has been superseded by *Sanchez–Llamas v. Oregon,* in which the United States Supreme Court held that suppression is not an appropriate remedy for violation of a state detainee's rights under article 36 of the Vienna Convention. —— U.S. ——, ——, 126 S.Ct. 2669, 2681, 165 L.Ed.2d 557 (2006). In *Sanchez–Llamas,* the Supreme Court noted that the Vienna Convention does not provide for suppression as a remedy, and that the rights asserted to be protected by the Vienna Convention are safeguarded by constitutional and statutory protections applicable to both citizens and foreign detainees in the United States. *Id.* at 2678, 2681–82.[1] The Supreme Court further observed that no other signatories to the Vienna Convention use suppression as a remedy for due process violations, making it unlikely that such a sanction was envisioned. *Id.* at 2678. The Supreme Court acknowledged that a foreign detainee can nonetheless raise the issue of violation of the Vienna Convention as part of a broader challenge to the voluntariness of a statement to police. *Id.* at 2682.

---

1. All of those safeguards are assured to state detainees under the Fourteenth Amendment.

We conclude that the holding in *Sanchez–Llamas* is consistent with our prior holding in *State v. Miranda*, but take this opportunity to refine that holding to mirror the holding of *Sanchez–Llamas*. Therefore, we now hold that suppression is not an appropriate remedy for violation of a foreign detainee's rights under article 36 of the Vienna Convention, but may be considered in assessing whether a statement was voluntary, knowing, and intelligent.

■■■■ Appellant argues that because he would have heeded advice from the consulate not to speak to the police without an attorney, he was prejudiced and is therefore entitled to suppression under *State v. Miranda*. Essentially, appellant asserted to the district court that waiver of his rights was not voluntary, knowing, and intelligent. A state may not introduce a defendant's in-custody statements absent the defendant's voluntary, knowing, and intelligent waiver of his constitutional rights. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). Generally, the state is deemed to have met its burden under *Miranda v. Arizona* if it can show that the *Miranda* warning was given and the defendant stated that he understood the rights. *State v. Linder*, 268 N.W.2d 734, 735 (Minn.1978). We independently review whether the state has established by a preponderance of the evidence that a defendant validly waived his constitutional rights. *State v. Williams*, 535 N.W.2d 277, 286 (Minn. 1995).

■■■■ The record in this case reflects that Knight, with the assistance of an interpreter, took care to ask appellant if he understood each right as it was read, and when appellant indicated a misunderstanding of the right to remain silent, Knight explained the right in a manner that led to appellant's acknowledged understanding.

Appellant did not express any lack of understanding or misunderstanding of any of the other rights and affirmatively stated that he understood each right as it was read to him. We find no merit in appellant's assertion that his waiver was not voluntary due to a lack of understanding of his rights. Furthermore, because appellant stated that he understood his rights, the district court did not abuse its broad discretion to admit expert testimony by denying appellant's request to call an expert witness to testify about why Mexican nationals may not understand the *Miranda* warning.

■■■■ Appellant also argues that his prior experiences in the Mexican Army and his misapprehension of the American legal system are relevant factors in determining whether his waiver was voluntary. But the United States Supreme Court has soundly rejected the proposition that a waiver of constitutional rights is invalid "whenever the defendant feels compelled to waive his rights by reason of any compulsion, even if the compulsion does not flow from the police." *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). "*Miranda* protects defendants against *government* coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." *Id.* (emphasis added). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167, 107 S.Ct. at 522.

In this case, there is no evidence that the police coerced appellant to waive his constitutional rights, and his subjective motivations for waiving his rights and making a confession are irrelevant to a determination that the statement was not coerced by the government and was therefore voluntary. Even if appellant would have heeded advice from the consulate not

to talk to the police without a lawyer present, it does not make his statement involuntary.[2] The district court did not err in concluding that appellant's statement and confession were voluntary, and did not err in denying his motion to suppress.

## II. Opinion evidence of CornerHouse interviewer

Appellant argues that the district court erred by allowing Nuernberg to vouch for complainant's credibility by testifying that, in her opinion, complainant had been sexually abused.[3] "The admission of expert testimony is within the broad discretion accorded a trial court, and rulings regarding materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence may be reversed only if the trial court clearly abused its discretion." *State v. Ritt*, 599 N.W.2d 802, 810 (Minn. 1999) (quotation and citation omitted); *see also State v. Grecinger*, 569 N.W.2d 189, 194 (Minn.1997) (holding that reversal requires "apparent error"). Expert testimony is generally admissible if it assists the fact-finder, has a reasonable basis, is relevant, and has probative value that outweighs its prejudicial effect. *State v. Jensen*, 482 N.W.2d 238, 239 (Minn.App.1992), *review denied* (Minn. May 15, 1992).

### a. Vouching testimony is inadmissible except in unusual cases

"With respect to most crimes the credibility of a witness is peculiarly within the competence of the jury, whose common experience affords sufficient basis for the assessment of credibility." *State v. Myers*, 359 N.W.2d 604, 609–10 (Minn. 1984). In most cases, even though an expert's testimony about the credibility of a witness could provide the jury with useful information, "the possibility that the jury may be unduly influenced by an expert's opinion mitigates against admission." *Id.* at 610. "In [*State v.*] *Saldana*, however, we recognized that when [an] alleged victim of a sexual assault is a child or mentally retarded person there is presented one of those 'unusual cases' in which expert testimony concerning credibility of a witness should be received." *Id.* (citing *State v. Saldana*, 324 N.W.2d 227, 231 (Minn.1982)).[4]

In *Myers*, the supreme court held that despite the effect of bolstering a complainant's credibility, if a district court determines that such testimony will be helpful to a jury, an expert qualified to render an opinion with respect to the emotional and psychological characteristics often observed in children who are victims of sexual abuse may testify about those characteristics and may describe characteristics or emotional conditions that the expert observed in the complainant. 359 N.W.2d at 609–11 (noting that the common experience of the jury may represent a less than adequate foundation for assessing the

---

2. As the Supreme Court noted in *Sanchez–Llamas*, article 36 of the Vienna Convention does not guarantee assistance of any kind from a consulate of a foreign national's detention. 126 S.Ct. at 2681.

3. We reject as without merit the state's assertion that appellant failed to preserve this objection for appeal. Prior to and during trial, appellant specifically challenged this proposed testimony as improper vouching. The district court expressed its own concern about the vouching nature of this testimony. At trial, appellant objected to foundation for Nuernberg's opinion on credibility, again preserving this issue for appeal.

4. *Saldana* held that the district court abused its discretion by allowing a sexual-assault victim's counselor to testify that she believed a complainant was a victim of sexual assault and rape and did not "make it up" or fantasize, because the jurors were as capable as the expert in assessing the credibility of the adult alleged victim. 324 N.W.2d at 231–32.

credibility of a young child who complains of sexual abuse). But the *Myers* court cautioned that, generally, even such an expert cannot testify that a child's allegations are credible "for the expert's status may lend an unwarranted stamp of scientific legitimacy to such allegations." *Id.* at 611. (quotation omitted).

■ Although the present case involves a child victim of sexual abuse and therefore technically falls within the description of the type of unusual case in which the supreme court has recognized that expert testimony concerning the credibility of a witness should be received, we conclude, based on the age and ability of complainant in this case to testify about her allegations, that the district court erred by admitting Nuernberg's opinion testimony, particularly where no foundation for the interviewer's expertise in assessing credibility was established.

The district court relied on *Myers* and *State v. Dana,* 422 N.W.2d 246, 250–51 (Minn.1988), to conclude that it was required to admit Nuernberg's opinion that complainant had been sexually abused. In *Dana,* after noting that the issue before it was a psychologist's opinion that the defendant had abused the preschool complainants, not the psychologist's testimony that the children had been abused, the supreme court concluded that admission of the psychologist's opinion that the defendant had sexually abused the complainants was erroneous. 422 N.W.2d at 250. But the court determined that admitting the opinion testimony was not prejudicial to the defendant because the "real issue for the jury was whether the children had been sexually abused, not who did it." *Id.* *Dana* concludes with the enigmatic sentence: "[e]xpert testimony relating to whether the children had been sexually abused was properly admitted." *Id.* at 250–51.

This sentence appears to relate to this court's holding that, because in a sexual assault case involving preschool-aged children "an expert's opinion concluding that a child has been sexually abused is helpful to the jury and thus admissible," the district court had not abused its discretion by admitting the opinion. *State v. Dana,* 416 N.W.2d 147, 153 (Minn.App.1987), *rev'd,* 422 N.W.2d 246.

■ Acknowledging the pressure on district court judges to promptly rule on evidentiary issues during a trial, we respectfully caution the district courts that an appellate court's affirmance of a district court's exercise of discretion on an evidentiary issue is not a mandate about what must be admitted into evidence in another case. Here, the district court erroneously concluded that *Dana* required admission of an expert's testimony that sexual abuse had occurred but, at most, *Dana* stands for the proposition that, in an appropriate case, a district court will not be held to have abused its discretion by admitting such evidence.

Moreover, we conclude that because the facts of this case are significantly different from the facts in *Myers* and *Dana,* those cases do not justify admission of Nuernberg's opinion in this case. Complainant here was a pre-teen, aged 11 at the time of the interview and 12 at the time of trial, not a preschooler like the children involved in *Dana,* or a seven-year-old like the child involved in *Myers.* Complainant did not have any cognitive deficits and was able to describe the various acts of sexual contact and penetration in great detail, including what kind of underwear appellant wore, how he cleaned her and himself after the incidents, things he told her about himself, and how his penis looked and felt during the abuse. In her interview, complainant explained how appellant made her spread her legs and smile as he photographed her

and told her that if she told anyone about the abuse he was going to say that she wanted to do it and that her mother was selling her. Complainant's ability to testify was comparable to that of many adult witnesses, and the jury was able to judge her credibility based on the criteria for credibility contained in the jury instructions.

Another important distinction between this case and *Myers* and *Dana* is that the state did not offer Nuernberg as an expert qualified to testify about the characteristics of abused children or qualified to identify those characteristics in a particular child. The state presented Nuernberg, who has a bachelor's degree in social work and sociology, as an "interview specialist" with expertise in interviewing potentially abused children in a non-leading manner that accurately preserves, in a recorded interview, any information the child is capable of reporting. Appellant did not challenge Nuernberg's expertise in this area; he only challenged her as an expert on credibility. *See Saldana*, 324 N.W.2d at 229, 232 (noting that a counselor for sexual assault victims, who had a bachelor's degree in psychology and social work but no medical education or training, was unqualified to determine whether a person could differentiate between reality and fantasy or detect whether a person was telling the truth or fabricating a story).

 We also note that interviewers are not typically called upon to explain interview techniques or criteria for assessing credibility in an interview to a jury. Generally, jurors are able to discern these factors from the interview itself. But the protocol for interviewing child reporters of sexual abuse, which takes into account the manner in which children of different ages remember and communicate sensitive information, may not be within the experience of jurors or discernable from the

interview itself. Therefore, a district court has the discretion to admit testimony about the interview protocol and how it is designed to elicit the maximum amount of information a child has to report that will be helpful to a jury and not overly prejudicial to a defendant. Appellant did not object to testimony on these factors.

### b. Admission of Nuernberg's opinion testimony was harmless error

 On appeal, appellant argues that Nuernberg's opinion testimony was prejudicial, noting that this court, in an opinion released after appellant's trial, cautioned against the practice of eliciting credibility-related testimony from interviewers such as Nuernberg. *See State v. Wembley*, 712 N.W.2d 783, 790–91 (Minn.App.2006), *aff'd*, 728 N.W.2d 243, 245 (Minn.2007) (rejecting Wembley's sole issue on review, that the district court committed reversible error by replaying the victim's CornerHouse interview for the jury off the record and without his presence or presence of the district court).

In *Wembley*, we held that the testimony of a CornerHouse interviewer constituted impermissible vouching, but that such testimony was not prejudicial to the defendant. *Id.* at 792. Further, we reemphasized the general rule that "['a]n expert witness may not testify as to the credibility of a specific witness, though the expert may be able to testify generally as to certain psychological or physiological conditions that may affect credibility, if such testimony is beyond the knowledge and experience of an average jury'." *Id.* at 791 (quoting *State v. Reese*, 692 N.W.2d 736, 741 (Minn.2005)) (holding that exclusion of an expert witness's opinion that a victim's drug use affected her ability to give reliable testimony was not an abuse of discretion).

Appellant argues that because Nuernberg testified not only to the details of complainant's interview that matched the assessment criteria, but also gave her opinion that complainant had been sexually abused, he was even more prejudiced by the testimony than the defendant in *Wembley*. Although the prosecutor here carefully avoided directly asking Nuernberg about complainant's credibility or truthfulness, it is apparent in this case, as it was in *Wembley*, that the interviewer was, in fact, stating her opinion that complainant was credible. And defense counsel's cross-examination made this conclusion explicit.

After Nuernberg explained the protocol and factors for assessing a child's responses, the jury was in a position to assess the complainant's credibility without the aid of Nuernberg's opinions on how complainant's interview met the assessment criteria and that complainant had been sexually abused. And it is doubtful that Nuernberg is qualified as an expert on a child's credibility, despite her expertise in the interview protocol. Nonetheless, given the entire record in this case, we conclude that the verdict is surely not attributable to Nuernberg's opinion testimony, and its erroneous admission does not require reversal of appellant's conviction and a new trial. *See State v. Post*, 512 N.W.2d 99, 102 n. 2 (Minn.1994) (stating that if the district court erred in admitting evidence, the reviewing court determines "whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the verdict").

The jury watched the videotape of complainant's CornerHouse interview and could judge for itself all of the factors Nuernberg assessed in forming her opinion. The jury was able to compare what they saw and heard on the interview tape with complainant's testimony at trial. The jury was instructed that it was the sole judge of witness credibility. The jury was capable of using the assessment factors described by Nuernberg to evaluate complainant's interview and her trial testimony. Additionally, the jury heard appellant's confession to the police that he digitally penetrated complainant's vagina with his finger, performed oral sex on her, and had vaginal intercourse with her. The jury also heard evidence that appellant confessed to complainant's mother in complainant's presence and begged them to forgive him. The jury was able to judge the credibility of appellant's basis for recanting his confession.

Appellant argues that because, during deliberations, the jury specifically asked the court if Nuernberg is "considered an expert in her field, thus allowed an expert opinion?" the testimony falls under the caution given in *Myers* that "the expert's status may lend an unwarranted stamp of scientific legitimacy to the allegations." *Myers*, 359 N.W.2d at 611 (quotation omitted). The jury's confusion was, no doubt, caused by closing arguments in which the prosecutor declared Nuernberg an expert and defense counsel asserted that Nuernberg was not an expert. The only answer given to this question was that the jury had all of the information it needed to make such a determination. Nuernberg's credentials and expertise would not likely lead anyone to assign "scientific legitimacy" to her opinion on complainant's credibility. The jury was given the usual instruction that an expert's opinion is not entitled to any greater weight than the testimony of any other witness. Based on all of these circumstances, we conclude that despite the abuse of discretion in admitting Nuernberg's opinion that complainant had been sexually abused, the opinion did not affect the verdict and was harmless error.

## III. Sentencing

■ The jury found that appellant (1) committed sexual abuse multiple times over an extended period of time and (2) engaged in multiple forms of penetration.[5] Appellant argues that these factors do not provide a proper basis for the upward durational departure in his sentence because the first factor relies on uncharged offenses and the record does not support the second factor: that multiple forms of penetration occurred during any one incident.

■ We review departures from the Minnesota Sentencing Guidelines' presumptive sentence for an abuse of discretion. *State v. Thompson,* 720 N.W.2d 820, 828 (Minn.2006). Reversal is warranted only if the reasons for the departure are improper or inadequate and there is insufficient evidence to justify an aggravated sentence for the offense of which the defendant was convicted. *Taylor v. State,* 670 N.W.2d 584, 588 (Minn.2003).

■ Multiple acts of sexual contact and penetration committed as part of the offense of which a defendant was convicted have served as aggravating factors justifying an upward sentencing departure. *Id.,* 670 N.W.2d at 588. But if the evidence "does not support the conclusion that the defendant committed the instant offense for which he is being sentenced in a particularly serious way, then it cannot be relied upon as a ground for departure." *Id.* (quotation and citation omitted). Because

a defendant may not be sentenced for a crime other than the one of which he was convicted, a district court may rely only on the egregious conduct underlying that offense. *Id.*

### a. Use of multiple acts of sexual abuse and penetration to enhance sentence did not violate *Taylor*

■ Multiple acts of sexual abuse and multiple forms of sexual penetration may only serve as a basis for an upward departure if such acts took place during the offense of which appellant was convicted. *Id.* Appellant was convicted of two counts of first-degree criminal sexual conduct under Minn.Stat. § 609.342, subd. 1(a), for abuse occurring on several occasions between 2004 and 2005. The statute criminalizes sexual penetration and sexual contact with a person who is under 13 years of age when the actor is more than 36 months older than the complainant.

Appellant argues that because Minn. Stat. 609.342, subd. 1(h)(iii) (2004), criminalizes similar conduct by an actor who has a significant relationship to the complainant and includes multiple acts committed over an extended period of time as part of the offense, the state is impermissibly using "another element of a more serious provision of the statute to request a sentencing enhancement."[6] We disagree. Because the multiple acts found by the jury occurred as part of the offense of which appellant was convicted, the district

---

**5.** Findings that support an upward durational departure from the presumptive sentence must be found by a jury or admitted by the defendant in order to comply with the Sixth Amendment protections as stated in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *State v. Shattuck,* 704 N.W.2d 131, 142 (Minn.2005). Appellant does not dispute that the state properly provided notice of its intention to seek an upward sentencing departure and that the district

court properly convened a sentencing jury to answer additional questions regarding aggravating factors.

**6.** There is no merit in appellant's argument that the state could have charged him with a violation of section 609.342, subd. 1(h)(iii), because the state could reasonably conclude that appellant did not have a significant relationship to the complainant as defined in section 609.341, subd. 15(3) (2004).

court did not err in using this factor to support the upward sentencing departure.

### b. Multiple types of penetration is a valid aggravating factor in this case

Appellant does not dispute that "multiple types of penetration" can be a valid ground for upward departure when it occurs in a single behavioral incident. *See, e.g., State v. Griffith,* 480 N.W.2d 347, 351 (Minn.App.1992) (holding that three types of vaginal penetration justified upward departure), *review denied* (Minn. Mar. 19, 1992). But appellant argues that because complainant testified about multiple types of penetration that occurred over a year and the record does not support that appellant penetrated her in different ways each time there was sexual contact, multiple types of penetration is not a valid departure factor in this case.

There is no authority for appellant's proposition that when a defendant is charged with sexual assault occurring over a period of time, multiple types of penetration cannot be considered as an aggravating factor unless the acts all occurred in a single incident. The record fully supports that appellant engaged in multiple forms of penetration with complainant, and we conclude that the district court did not abuse its discretion in relying on this factor to enhance appellant's sentence.

### IV. Appellant's pro se claims

The only claim that appellant makes in his pro se supplemental brief that is not addressed in counsel's appellate brief is that the evidence presented by the state was not sufficient to support his conviction. In considering a claim of insufficient evidence, this court's review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did."

*State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). The reviewing court must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). This is especially true when resolution of the matter depends mainly on conflicting testimony. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn. 1980). The reviewing court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *Bernhardt v. State,* 684 N.W.2d 465, 476–77 (Minn.2004). In this case, the jury apparently credited the complainant's testimony and appellant's confession. This evidence amply supports the verdict.

## DECISION

Suppression is not an appropriate remedy for violation of appellant's rights under article 36 of the Vienna Convention. Even though appellant's Vienna Convention rights were violated, we conclude that appellant's statement was voluntary, knowing, and intelligent, and the district court did not err in denying appellant's motion to suppress his statement. The opinion testimony of a CornerHouse interviewer that the complainant had been sexually abused constituted vouching for the complainant's credibility, and its admission was an abuse of discretion. But in light of the entire record, we conclude this was harmless error. The evidence was sufficient to sustain appellant's conviction, and the aggravating factors found by the jury were properly used to enhance appellant's sentence.

**Affirmed.**