*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0837**

State of Minnesota,
Respondent,

vs.

Justin Wayne Hannine,
Appellant.

**Filed May 11, 2015
Affirmed
Connolly, Judge**

Stearns County District Court
File No. 73-CR-13-6511

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, Minnesota; and

Janelle Kendall, Stearns County Attorney, St. Cloud, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Peterson, Judge; and Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant challenges his conviction of second-degree criminal sexual conduct, arguing that one of the state's witnesses, the nurse practitioner who examined the four-year-old complainant, improperly vouched for the complainant by bolstering the complainant's credibility when she said she believed the complainant had been sexually abused based on her physical exam of the complainant, the complainant's verbal and nonverbal answers to questions during the exam, and the information provided by the complainant's mother. Because we see no error in the admission of the nurse practitioner's testimony and no prejudice to appellant by its admission, we affirm.

**FACTS**

Appellant Justin Hannine and L.F. had a daughter, E., in April 2009. They separated soon afterwards. Appellant was awarded joint legal custody and parenting time of alternate weekends, every Thursday night, and alternate Monday nights. At trial, both appellant and L.F. testified that their relationship was good as far as E. was concerned.

In July 2013, appellant picked up E., then four years old, for a scheduled overnight visit and returned her to L.F. the next morning. He later called L.F. to tell her that E. had not used the bathroom while she was with him.[1]

---

[1] In his statement to the police, appellant said only that he called L.F. to report that E. had not used the bathroom. But when he testified, he added that E. was using the bathroom at the time he called, that L.F. asked E., "Is everything okay?" and that E. answered, "Yeah."

2

The next day, E. told L.F. that she experienced pain while urinating. L.F. observed redness in E.'s vaginal area. When she wanted to apply a medicinal cream, E. cried and asked L.F. not to touch her because that was where appellant touched her and put his finger. When asked to show on a doll where appellant touched her, E. pointed to the vaginal area. E.'s half-sister, H., 16, was present at the time.

L.F. contacted the police. E. refused to speak to a male police officer, but did talk to a female police officer. In a recorded interview, E. again said that appellant had touched her vaginal area and, using a doll, demonstrated, how appellant put his finger in her vaginal area. E. also refused to speak to a male doctor but spoke to a female pediatric nurse practitioner, who examined her.

Appellant was charged with first-degree and second-degree criminal sexual conduct. He waived his right to a jury trial. Twelve witnesses testified at a bench trial, including E., appellant, L.F., E.'s half-sister, and the nurse practitioner.

When E. testified, she showed on an anatomical drawing where appellant touched her and said that: (1) it made her feel sad, (2) he used his finger and "it picked," and (3) it hurt because "he picked."

The nurse practitioner testified that, in a case of suspected abuse, she first obtains a history from the caretaker who brings the child for the appointment. She then has the caretaker leave the room and does a physical exam of the child, during which she asks questions. She testified further that, in response to her questions, E. told her that appellant touched her and showed how he made circles on her clitoris. When she asked E. if she had been touched in various other parts of the genital area, E. said "No."

The nurse practitioner was asked if her examination of E. was consistent with E. being sexually abused. She answered, "I do believe that she's been sexually abused, based on her statements during my physical exam and the history that I obtained from [L.F.]." She also testified that she based her opinion in part on E.'s putting her own finger on her clitoris and rubbing it and in part on E.'s telling her that this was what appellant did.

On cross-examination, the nurse practitioner testified that, except for the reddening of the outer labia, which was also consistent with various conditions other than sexual abuse, the physical exam showed no sign of any sort of abuse, and that she had not asked E. who else E. talked to about appellant's touching her vaginal area.

The district court found the state had not proved beyond a reasonable doubt that appellant sexually penetrated E. but had proved that he intentionally touched her intimate parts with sexual or aggressive intent, that E. was then under 13, and that appellant was more than 36 months older than E., and concluded that appellant was not guilty of first-degree criminal sexual conduct but was guilty of second-degree criminal sexual conduct. He was sentenced to 48 months in prison, stayed, and placed on probation for 25 years.

He challenges his conviction, arguing that it was plain error to admit the nurse practitioner's testimony because she vouched for E.'s credibility when she gave her opinion, to a reasonable degree of medical certainty, that E. had been sexually abused.

**D E C I S I O N**

No objection was made to the nurse practitioner's testimony.

> [When] defense counsel fail[s] to object to the admission of . . . testimony, our review is under the plain error standard. The plain error standard requires that the defendant show: (1) error; (2) that was plain; and (3) that affected substantial rights. If those three prongs are met, we may correct the error only if it seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings.

*State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002) (quotation and citations omitted).

E. was deemed competent to testify and testified.

> Once a witness is deemed competent, expert opinions concerning the witness's reliability in distinguishing truth from fantasy are generally inadmissible because such opinions invade the [factfinder's] province to make credibility determinations. Expert testimony concerning the credibility of a witness should be received only in unusual cases. An example of such an unusual case is a sexual assault case where the alleged victim is a child . . . .

*State v. Saldana*, 324 N.W.2d 227, 231 (Minn. 1982) (quotation and citations omitted). "In the case of a sexually abused child consent is irrelevant and [the factfinder is] often faced with determining the veracity of a young child who tells of a course of conduct . . . ." *State v. Myers*, 359 N.W.2d 604, 610 (Minn. 1984) (holding that an expert's background information on abused children was "helpful and appropriate in cases of sexual abuse of children, and particularly of children as young as this complainant," who was seven at the time of the abuse).

The nurse practitioner did not testify as to who might have sexually abused E. or as to E.'s veracity. She testified only that she believed E. had been sexually abused and

that this belief was founded on her physical exam of E., E.'s verbal and nonverbal answers to her questions during the exam, and the information she received from L.F. Similar testimony has been admitted in similar cases. *See, e.g.*, *State v. Dana*, 422 N.W.2d 246, 250-51 (Minn. 1988) (holding that, while expert testimony as to who had abused two brothers aged four and five was objectionable, "[e]xpert testimony relating to whether the children had been sexually abused was properly admitted"); *State v. Hollander*, 590 N.W.2d 341, 349 (Minn. App. 1999) (holding that social worker's opinion that four-year-old complainant whom she interviewed had been sexually abused was properly admitted); *State v. Campa*, 390 N.W.2d 333, 335 (Minn. App. 1986) (holding that, while physician's unobjected-to testimony that her professional opinion that complainant had been sexually abused as a preschooler was based in part on complainant's personal report, which physician "believe[d] to be true," was improper, the error did not mandate a new trial), *review denied* (Minn. Aug. 27, 1986). The nurse practitioner here did not testify that she believed E.'s account to be true; she testified that her belief that E. was sexually abused was founded, in part, on E.'s responses to her questions. Admitting that testimony was not plain error.

Appellant relies on *State v. Morales-Mulato*, 744 N.W.2d 679 (Minn. App. 2008) (holding that, although interviewer's testimony that, in her opinion, 11-year-old complainant had been sexually abused was improper vouching for complainant's credibility, it was harmless error, and affirming because evidence was sufficient to sustain conviction), *review denied* (Minn. Apr. 29, 2008). In that case,

6

> [the c]omplainant . . . was a pre-teen, aged 11 at the time of the interview and 12 at the time of trial, not a preschooler . . . . [She] did not have any cognitive deficits and was able to describe the various acts of sexual contact and penetration in great detail, including what kind of underwear appellant wore, how he cleaned her and himself after the incidents, things he told her about himself, and how his penis looked and felt during the abuse. . . . [The c]omplainant's ability to testify was comparable to that of many adult witnesses, and the jury was able to judge her credibility based on the criteria for credibility contained in the jury instructions.

*Id.* at 688-89. Because the complainant was comparable to an adult rather than a small child, this court concluded that, "based on the age and ability of complainant in this case to testify about her allegations, . . . the district court erred by admitting [the interviewer's] expert testimony, particularly where no foundation for the interviewer's expertise in assessing credibility was established." *Id.* at 688.

Appellant's reliance on *Morales-Mulato* is mistaken because that case is clearly distinguishable. Unlike the victim in that case, E. differed significantly from an adult in her testimony: at one point she said she had told L.F. about the abuse four times, but at another point she said she had told L.F. 70 times. As the district court noted,

> [E.] was asked who she had practiced her testimony with . . . [but i]t was never established whether or not [E.] knew the meaning of the words 'practiced' and 'testimony.' While a four-year-old child may know the meaning of the word 'practice,' the Court finds it is unlikely that a four-year-old child understands the meaning of the word 'testimony.'

E.'s ability to testify was not "comparable to that of many adult witnesses."[2]

---

[2] Appellant also relies on *Van Buren v. State*, 556 N.W.2d 548, 552 (Minn. 1996) (concluding that admission of testimony from 14-year-old complainant, her 12-year-old friend, and a police officer that some members of the complainant's family believed the

Finally, appellant argues that "[g]iven that this was such a close case and [appellant's] guilt hinged upon who was found to be more credible, the improper vouching testimony surely affected the verdict and denied [appellant] his right to a fair trial." But we do not consider this to be a close case. E.'s statements as to what appellant did were consistent throughout the investigation and consistent with her testimony. E.'s testimony provided a basis, exclusive of the nurse practitioner's implication that she believed E., for the district court to independently determine E.'s credibility based on other trial evidence. The district court's finding that appellant was not credible was also supported by the record: appellant's statement to the police during investigation differed from his testimony with respect to his phone call to L.F.

Even if admitting the nurse practitioner's statement was plain error, it did not affect appellant's right to a fair trial or the fairness, integrity, or public reputation of the judicial proceedings. *See Strommen*, 648 N.W.2d at 686. Appellant's conviction is affirmed.

**Affirmed.**

---

complainant's story that a male family member had assaulted her substantially affected the verdict that the male family member was guilty). "[W]e fail to see how what other people believed about whether the sexual assaults took place sheds any light on [the complainant's] state of mind. . . . Whether others believed [her] story about [his] sexual assaults had no probative value and should have been excluded under Minn. R. Evid. 402." Because *Van Buren* does not concern the abuse of a small child or expert testimony, it is irrelevant here.