*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A22-0590**

State of Minnesota,
Respondent,

vs.

Casey Lee Frankl,
Appellant.

**Filed January 16, 2024**
**Affirmed**
**Johnson, Judge**

Wilkin County District Court
File No. 84-CR-21-108

Keith Ellison, Attorney General, Jacob Campion, Assistant Attorney General, St. Paul, Minnesota; and

Joseph Glasrud, Wilkin County Attorney, Breckenridge, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Frisch, Judge; and Kirk, Judge.*

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JOHNSON**, Judge

A Wilkin County jury found Casey Lee Frankl guilty of seven counts of criminal sexual conduct based on evidence that he sexually abused two children. We conclude that Frankl is not entitled to a new trial on the ground that the prosecution elicited vouching testimony. We also conclude that the postconviction court did not err by rejecting Frankl's claims of ineffective assistance of counsel and denying his postconviction petition. Therefore, we affirm.

## FACTS

In February 2021, nine-year-old A.N. confided to a school counselor that she had been sexually abused by her mother's boyfriend, Frankl. The counselor reported the information to the local police department, which arranged for a forensic interview. During that interview, A.N. described three occasions when Frankl inappropriately touched her genital area, two of which occurred in another state and one of which occurred in Wilkin County. A.N. stated that, on the third occasion, in Wilkin County, Frankl inserted his fingers into her vagina.

After A.N.'s disclosures, the forensic interviewer interviewed A.N.'s older sister, 11-year-old T.N. She described two occasions when Frankl sexually abused her. T.N. stated that, in 2019, Frankl forced her to touch his penis over his clothing while they were sitting on a couch and that, in 2020, he inserted his fingers into her vagina while they were lying on Frankl's bed.

2

In March 2021, the state charged Frankl with two counts of first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subd. 1(a) (Supp. 2019 & 2020), and six counts of second-degree criminal sexual conduct, in violation of Minn. Stat. § 609.343, subds. 1(a), 1(g) (2018, Supp. 2019, & 2020).

Before trial, T.N. met with prosecutors. She disclosed additional incidents of sexual abuse by describing a continuous pattern of conduct by Frankl over a period of years. The state later amended the complaint to allege six charges, three concerning one incident involving A.N. and three concerning two incidents involving T.N.

The case was tried on four days in November 2021. The state called ten witnesses, including A.N., T.N., the school counselor, and the forensic interviewer. The state introduced video-recordings of both forensic interviews, which were played for the jury.

A.N. testified about the three incidents she had disclosed in her forensic interview. She also testified about a fourth incident that occurred in another state when she was five years old. Frankl's trial attorney did not cross-examine A.N.

T.N. testified that Frankl inappropriately touched her for the first time, in Minnesota, when she was seven years old and in second grade. T.N. testified that Frankl put his hand under her clothing and touched her vagina, moving his finger up and down. T.N. testified that Frankl told her "this is our secret." T.N. also testified about another incident in Minnesota that occurred when she was nine years old and in fourth grade. T.N. testified that Frankl inserted his penis into her vagina when the two of them were alone in a bedroom. T.N. further testified that, when she was approximately 11 years old, Frankl inserted his penis into her vagina "at least" three times each month for more than one school

3

year. On cross-examination, Frankl's trial attorney asked T.N. only a few questions about her interest in reading and her favorite book.

After both parties rested, the district court allowed the state to amend the complaint by dismissing one original charge and adding three charges to reflect T.N.'s testimony about the additional incidents. The jury found Frankl guilty of counts 1, 2, 3, 4, 5, 7, and 8, as amended, and not guilty of count 6, as amended. In February 2022, the district court imposed consecutive sentences of 144, 180, and 144 months of imprisonment on counts 1, 3, and 8. The district court did not impose sentences on counts 2, 4, 5, and 7.

In April 2022, Frankl filed a notice of appeal from the judgment of conviction. In November 2022, he moved for a stay of the appeal and a remand for postconviction proceedings, and this court granted the motion. In January 2023, Frankl filed a postconviction petition in which he argued that he received ineffective assistance of counsel at trial. In April 2023, the postconviction court denied Frankl's petition without an evidentiary hearing. This court then dissolved the stay and ordered briefing. Frankl makes two arguments for relief, one based on an alleged trial error and one based on the denial of his postconviction petition.

## DECISION

### I. Eliciting Vouching Testimony

Frankl argues that he is entitled to a new trial on the ground that the prosecutor engaged in misconduct during trial. Specifically, he argues that the prosecutor improperly elicited vouching testimony from the school counselor and the forensic interviewer.

4

The right to due process of law includes the right to a fair trial, and the right to a fair trial includes the absence of prosecutorial misconduct. *Spann v. State*, 704 N.W.2d 486, 493 (Minn. 2005); *State v. Ferguson*, 729 N.W.2d 604, 616 (Minn. App. 2007), *rev. denied* (Minn. June 19, 2007). "Prosecutors have an affirmative obligation to ensure that a defendant receives a fair trial." *State v. Jones*, 753 N.W.2d 677, 686 (Minn. 2008) (quotation omitted). A trial is unfair if a witness testifies by "vouch[ing] for or against the credibility of another witness." *State v. Ferguson*, 581 N.W.2d 824, 835 (Minn. 1998). This is so because whether a witness is credible or not credible is "strictly the domain of the jury." *State v. Blanche*, 696 N.W.2d 351, 374 (Minn. 2005).

In this case, Frankl did not object to the prosecutor's actions that he now characterizes as misconduct. The parties agree that this court should apply the modified plain-error test to Frankl's unobjected-to claims of prosecutorial misconduct. *See Woodard v. State*, 994 N.W.2d 272, 278 (Minn. 2023) (stating that modified plain-error test would apply to claim of misconduct by not making pre-trial disclosure of witness interviews); *State v. Carradine*, 812 N.W.2d 130, 146-47 (Minn. 2012) (applying modified plain-error test to claim of misconduct in jury selection); *State v. Kimmes*, 962 N.W.2d 487, 493-95 (Minn. App. 2021) (applying modified plain-error test to claim of misconduct by eliciting inadmissible evidence).

To prevail under the modified plain-error test, an appellant initially must establish that there is an error and that the error is plain. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). Prosecutorial misconduct is plain if there is "conduct the prosecutor should know is improper." *Id.* at 299-300. If there is a plain error, the burden shifts to the state,

5

which must show "that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* at 302 (quotation omitted). In determining whether the state has satisfied that burden, an appellate court should consider "the strength of evidence against the defendant, the pervasiveness of improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Cao*, 788 N.W.2d 710, 717 (Minn. 2010).

Frankl's argument is based on the prosecutor's questions concerning whether the school counselor believed that A.N.'s testimony was "coached or untrue" and questions concerning whether the forensic interviewer believed that A.N. "was not being truthful," whether there were "concerns about fabrication," and whether A.N. or T.N. had been "influenced" or "forced to say something." The state concedes that the questions constitute plain error.

With respect to the third requirement of the modified plain-error test, the state's primary contention is that the prosecutor's misconduct did not significantly affect the verdict because jurors watched the video-recordings of the forensic interviews and were able to make their own determinations concerning the credibility of the children's disclosures. In support of this contention, the state cites *State v. Wembley*, 712 N.W.2d 783 (Minn. App. 2006), *aff'd*, 728 N.W.2d 243 (Minn. 2007), and *State v. Morales-Mulato*, 744 N.W.2d 679 (Minn. App. 2008), *rev. denied* (Minn. Apr. 29, 2008), in which we engaged in similar reasoning.

In *Wembley*, this court concluded that, although a forensic interviewer improperly testified to the complainant's credibility, the appellant was not unfairly prejudiced because

the jurors had watched the video-recording of the interview and could judge for themselves whether the complainant was credible. 712 N.W.2d at 792. In *Morales-Mulato*, we concluded that, although a forensic interviewer improperly testified to her opinion that the complainant was credible, the error was a harmless error. 744 N.W.2d at 690. As in *Wembley*, we reasoned that the jurors watched the video-recording and could make their own evaluations of the complainant's credibility. *Id.*

In this case, the jury watched the video-recordings of A.N.'s and T.N.'s forensic interviews and, in addition, heard the trial testimony of both A.N. and T.N. In fact, the jury watched T.N.'s forensic interview for a second time during deliberations after the district court granted its request to do so. In addition, as in *Morales-Mulato*, the district court instructed the jury that it was the sole judge of witness credibility. *See id.* Accordingly, there is no reasonable likelihood that the prosecutor's misconduct in eliciting vouching testimony from the school counselor and forensic interviewer had a significant effect on the verdict.

Thus, Frankl is not entitled to a new trial on the ground of prosecutorial misconduct.

## II. Effectiveness of Counsel

Frankl also argues that the postconviction court erred by denying his petition for postconviction relief without conducting an evidentiary hearing.

Frankl alleged three claims of ineffective assistance of counsel in his postconviction petition and supported his allegations with a 13-page memorandum of law. First, he claimed that his attorney was ineffective because she did not investigate whether the additional accusations that T.N. disclosed to prosecutors before trial were consistent with

7

the results of her prior sexual-assault examination. Second, he claimed that his attorney was ineffective because she did not introduce into evidence the results of the two prior sexual-assault examinations. Third, he claimed that his attorney was ineffective because she did not cross-examine A.N. or T.N. and because she made an advance disclosure of her intention to not cross-examine them. In response, the state filed an answer and an eight-page memorandum of law. In reply, Frankl submitted a three-page letter brief. In April 2023, the postconviction court filed a 17-page order in which it denied Frankl's petition without an evidentiary hearing.

A postconviction petition "shall contain . . . a statement of the facts and the grounds upon which the petition is based and the relief desired." Minn. Stat. § 590.02, subd. 1(1) (2022). "[T]he burden of proof of the facts alleged in the petition shall be upon the petitioner to establish the facts by a fair preponderance of the evidence." Minn. Stat. § 590.04, subd. 3 (2022). A postconviction court, in its discretion, "may receive evidence in the form of affidavit, deposition, or oral testimony." *Id.* A postconviction court may deny a petition for postconviction relief without an evidentiary hearing if "the facts considered in the light most favorable to the petition, together with the arguments presented by the parties, conclusively show that the petitioner is not entitled to relief." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (quotation omitted). A postconviction court should hold an evidentiary hearing if "material facts are in dispute that . . . must be resolved in order to determine the issues raised on the merits." *Voorhees v. State*, 627 N.W.2d 642, 648 (Minn. 2001) (alteration in original) (quotation omitted).

8

The law applicable to claims of ineffective assistance of counsel is well established. "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also* Minn. Const. art. I, § 6. The Sixth Amendment right to counsel guarantees "the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added). In general, to prevail on a claim of ineffective assistance of counsel, a defendant must satisfy two requirements. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The first requirement of *Strickland* is concerned with whether an attorney's performance fell below an objective standard of reasonableness. 466 U.S. at 687-88; *State v. Vang*, 847 N.W.2d 248, 266-67 (Minn. 2014). The "objective standard is defined as 'representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances.'" *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004) (quoting *State v. Gassler*, 505 N.W.2d 62, 70 (Minn. 1993)). "Generally, we will not review an ineffective-assistance-of-counsel claim that is based on trial strategy." *Vang*, 847 N.W.2d at 267. The second requirement of *Strickland* requires "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland*, 466 U.S. at 694). If one of

9

the *Strickland* requirements is not satisfied, a court need not consider the other requirement. *State v. Mosley*, 895 N.W.2d 585, 591 (Minn. 2017). We apply an abuse-of-discretion standard of review to a postconviction court's decision to deny a postconviction petition without an evidentiary hearing. *Andersen v. State*, 913 N.W.2d 417, 422 (Minn. 2018).

Frankl's arguments on appeal mirror the three claims that he presented to the postconviction court. We will address each argument in turn.

## A.     T.N.'s Additional Accusations

Frankl first argues that his trial attorney was ineffective because she did not investigate whether T.N.'s expanded pre-trial accusations were consistent with the results of her prior sexual-assault examination.

This argument is based on a sexual-assault examination conducted on T.N. in March 2021, shortly after she made her initial disclosures in the forensic interview. Neither party introduced any evidence of the examination at trial. In postconviction proceedings, Frankl submitted an affidavit of a physician, who had reviewed the report prepared by the nurse who performed the sexual-assault examination of T.N. The physician stated that the nurse had concluded in her report that there was a "lack of any 'identifiable injuries and/or acute/chronic residua of sexual abuse'" but that the lack of such injuries or indicia of abuse "does not preclude the possibility that 'prior penetration or sexual abuse' occurred." The physician asserted that the nurse's conclusion "should be disregarded because it was based on an incomplete history" in that T.N. had disclosed only a few incidents of abuse at the time of the examination. The physician opined that, if the nurse had been "provided with a complete history of the alleged abuse, she may have revised her conclusion about whether

10

T.N.'s physical exam is consistent with her claims." In his memorandum of law, Frankl argued that his trial attorney should have consulted with a medical expert to determine whether the sexual-assault examination was consistent with T.N.'s expanded accusations. Frankl argued further that his trial attorney could have developed evidence that "would have neutralized" the results of the examination and would have emphasized that "there was no medical evidence to substantiate T.N.'s claims."

The postconviction court noted that the nurse did not testify at trial, that her report was not introduced as an exhibit, and that the state did not argue that the examination substantiated T.N.'s accusations. The postconviction court reasoned that, in light of the evidence actually introduced by the state, Frankl did not need to introduce the type of evidence described in the physician's affidavit. The postconviction court also reasoned that the physician "did not conclude that the physical findings were *inconsistent* with sexual abuse." Accordingly, the postconviction court determined that, even if Frankl's trial attorney should have investigated the matter, the result of the trial would not have been different. Thus, the postconviction court concluded that Frankl cannot satisfy the second requirement of *Strickland*.

Frankl contends that the postconviction court erred in that conclusion on the ground that "affirmative evidence of no physical corroboration" would have been better than the absence of any evidence concerning physical corroboration. Frankl also contends that his trial attorney could have cast doubt on T.N.'s accusations with "expert testimony about what kind of physical evidence one would expect to see." But Frankl does not have any such expert testimony or the prospect of obtaining it. The physician's affidavit refers to

11

the mere possibility that, depending on the age of a girl at the time of sexual abuse, there is more or less likelihood that physical injuries would be "observable." But the physician did not state that, in this case, the absence of any observable injuries in T.N.'s sexual-assault examination was inconsistent with T.N.'s expanded accusations. Consequently, the absence of an investigation by Frankl's trial attorney did not have any impact on the jury's verdict.

Thus, the postconviction court did not err by rejecting Frankl's first claim without an evidentiary hearing.

## B.    Evidence of Sexual-Assault Examinations

Frankl next argues that his trial attorney was ineffective because she did not introduce into evidence the reports of the prior sexual-assault examinations of A.N. and T.N.

Frankl contends that his trial attorney "did not know how to properly introduce the findings from A.N.'s and T.N.'s medical exams." This contention is based on the fact that Frankl's trial attorney attempted to question A.N.'s and T.N.'s father about the results of the sexual-assault examinations, which led to an objection, which was sustained. In addition, Frankl's trial attorney referred to the examinations in her closing argument, which led to another objection, which also was sustained.

The postconviction court rejected Frankl's theory. The postconviction court reasoned that decisions about what evidence to introduce generally are matters of trial strategy and that Frankl's trial attorney effectively avoided the unfavorable elements of the sexual-assault examinations but retained the ability to argue to the jury that the state had

12

not introduced physical evidence to support its allegations. The postconviction court also reasoned that Frankl cannot prove that the evidence at issue would have changed the outcome at trial. Accordingly, the postconviction court concluded that Frankl could not prove either the first or second requirement of *Strickland*.

Frankl challenges only the postconviction court's determination that his trial attorney's performance was not deficient. He does not challenge the postconviction court's determination that he was not prejudiced by the alleged deficiency. Our review of the record indicates that the postconviction court did not err by determining that the result of the trial would not have been different if Frankl had introduced evidence about the sexual-assault examinations.

Thus, the postconviction court did not err by rejecting Frankl's second claim without an evidentiary hearing.

## C.     Cross-Examination of A.N. and T.N.

Frankl last argues that his trial attorney was ineffective because she did not cross-examine A.N. at all, because she cross-examined T.N. only briefly, and because she made an advance disclosure of her intentions concerning cross-examination.

This argument is based on a colloquy between the district court and counsel, outside the presence of the jury, at the end of the second day of trial, after a discussion about jury instructions. The prosecutor asked about the schedule for the following day, a Friday. The district court estimated that the state would require another hour to complete the direct examinations of A.N. and T.N., and the prosecutor agreed. The district court then stated, "I also imagine that the cross examination won't be too long." Frankl's trial attorney

13

responded by stating, "If I were to be totally honest, your honor, at this point and time, I have no intention of cross-examining the girls." The district court commented, "I think it's a difficult cross examination to do, and I think in most situations, when you start cross examining them, you do more harm than good." Frankl's trial attorney said, "Yes." The district court then qualified its earlier comment by stating, "Obviously you have every right to do that, but I'm just looking at my timeframe." Frankl's trial attorney said, "For the sake of timing right now, absent some insane revelation that I must dive into, and I have no idea what that could be, I have no intention of cross examination." The district court concluded the conversation by saying, "I'm going to put twenty minutes cross examination, just in case; that's for both girls."

The postconviction court reasoned that Frankl's attorney's decision concerning whether to cross-examine a minor child during a sexual-abuse trial was a matter of trial strategy and, thus, unreviewable. *See Francis v. State*, 781 N.W.2d 892, 898 (Minn. 2010); *see also Vang*, 847 N.W.2d at 267. In addition, the postconviction court reasoned that Frankl's allegations were insufficient to prove the second requirement of *Strickland*.

Frankl contends that the postconviction court erred in relying on a trial-strategy rationale because there was no evidentiary hearing and, thus, no evidence that his trial attorney made a strategic decision. To the contrary, trial strategy is a matter of record. The district court stated, as a general matter, that "it's a difficult cross examination" and that, "in most situations, . . . you do more harm than good." Frankl's trial attorney indicated her agreement by saying, "Yes." Thus, there is a sufficient factual basis for the postconviction court's trial-strategy rationale.

14

Frankl also contends that his trial attorney should not have informed the prosecution in advance of her intentions with respect to cross-examination. It was appropriate for the attorney to engage in a discussion with the district court and opposing counsel about the order and timing of witness testimony on the following day. Such discussions generally allow valuable input when a district court is managing a trial. Frankl's trial attorney did not waive her right to cross-examine A.N. and T.N. She merely stated that, "at this point and time, I have no intention of cross-examining the girls." The district court confirmed the non-binding nature of the discussion by stating, "Obviously you have every right to do that, but I'm just looking at my timeframe." Frankl's trial attorney then reiterated that her comments were made "[f]or the sake of timing," and she reiterated further that whether she conducted cross-examinations depended on what was revealed during direct examinations. The district court concluded the conversation by estimating that Frankl's trial attorney would cross-examine A.N. and T.N. for 20 minutes, which confirms that Frankl's attorney was not foreclosed from conducting cross-examinations. Frankl's trial attorney's performance was not deficient on the ground that she shared her intentions with the district court and the prosecutor. In addition, Frankl has not explained how he was prejudiced by his trial attorney's statements.

Thus, the postconviction court did not err by rejecting Frankl's third claim without an evidentiary hearing.

In sum, the postconviction court did not err by denying Frankl's postconviction petition.

**Affirmed.**

15