*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1763**

State of Minnesota,
Respondent,

vs.

Matthew Joseph Knebel,
Appellant

**Filed August 24, 2015
Affirmed
Worke, Judge**

Washington County District Court
File Nos. 82-CR-13-4832, 82-CV-14-334

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Peter J. Orput, Washington County Attorney, Stillwater, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges the validity of his guilty plea to third-degree burglary. We affirm.

## FACTS

On September 16, 2013, officers responded to a report of a burglary at a complex in which Pro Vision, part of Anytime Fitness, rents/owns units. Approximately $100,000 worth of items was missing, including tools, electronic equipment, and a vehicle. The point of entry was a hole, large enough for a person to pass through, in the wall shared by Pro Vision's units and an adjacent unoccupied unit.

Days later, officers recovered the stolen vehicle from James Zemlicka. Several other items taken during the burglary were found at Zemlicka's residence. Zemlicka admitted that on September 15, appellant Matthew Joseph Knebel contacted him regarding the burglary. Cell-phone data showed that Knebel's cell phone pinged off a tower located near the burglary site on September 15 and 16. Knebel was charged with third-degree burglary.

When the complaint was filed, Knebel had several pending cases.[1] At an omnibus hearing, the district court noted that it had three files—two (including the current charges) handled by one attorney, and the third handled by another attorney, Craig Cascarano. Knebel's attorney stated that Cascarano had negotiated an agreement with the prosecutor, in which all three matters would be resolved and Knebel would be sentenced to 30 months in prison. But Cascarano had not communicated the agreement to Knebel, and Knebel was not prepared to accept the offer.

---

[1] (1) Interference with an emergency call, fifth-degree assault, and fourth-degree damage to property; (2) possession of burglary or theft tools; (3) possession of burglary or theft tools, and fourth-degree damage to property; and (4) fifth-degree possession of marijuana.

On February 24, 2014, Knebel, who appeared with his attorney, pleaded guilty to third-degree burglary. The state agreed to dismiss the two other files; not charge a receiving-stolen-property offense that had been submitted to the county attorney's office; and dismiss charges against Knebel's co-defendant, his fiancée, Tiffany Kollos. Knebel indicated that he understood the agreement and that there was no guarantee regarding sentencing—the state sought the presumptive guidelines sentence and Knebel sought probation. He acknowledged that the presumption was that he would receive a prison sentence.

Knebel agreed that he had sufficient time to go through the plea petition and discuss the matter with his attorney. When asked if his attorney was fully informed and educated on the evidence and possible defenses, Knebel responded, "Above and beyond." Knebel also agreed that Cascarano's presence was unnecessary. Knebel agreed that his attorney told him, "[I]f you screw up pending sentencing it doesn't make . . . a difference how compelling an argument you . . . make, you screw up, you're going to prison." The district court accepted Knebel's plea.

As part of his conditional release prior to sentencing, Knebel was ordered to complete the Teen Challenge program. On March 5, 2014, Knebel's probation agent was notified that Knebel left Teen Challenge against staff request. Knebel was eventually apprehended and incarcerated. At a bail hearing, Knebel stated that he thought Teen Challenge was merely a "recommendation." The district court stated, "the possibility that you would now be able to get [probation] was lost when you left Teen Challenge."

With six criminal-history points[2], Knebel's presumptive guidelines sentence was 30 months in prison.  At sentencing, Knebel argued for a downward departure.  The district court determined that there were no compelling circumstances supporting a departure and sentenced Knebel to 30 months in prison.  This appeal follows.

## DECISION

Knebel challenges the validity of his guilty plea on direct appeal.  A defendant has a right to challenge his guilty plea on direct appeal even though he has not moved to withdraw the guilty plea in the district court.  *State v. Anyanwu*, 681 N.W.2d 411, 413 (Minn. App. 2004).  But "[a] defendant does not have an absolute right to withdraw a valid guilty plea." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007).  After sentencing, a defendant may withdraw a guilty plea only by establishing that withdrawal is necessary "to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1; *Theis*, 742 N.W.2d at 646.  A manifest injustice is shown when a guilty plea is not valid.  *Theis*, 742 N.W.2d at 646.  A valid guilty plea "must be accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994).  We review de novo the validity of a guilty plea.  *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

*Accurate*

Knebel argues that his guilty plea was invalid because it was not accurate.  "A proper factual basis must be established for a guilty plea to be accurate." *Ecker*, 524 N.W.2d at 716.  The factual basis is adequate if there are "sufficient facts on the record to

---

[2] Knebel's criminal history includes convictions for theft, theft of a motor vehicle, and first-, second-, and third-degree burglary.

support a conclusion that [the] defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted). "The [district] court should not accept the plea unless the record supports the conclusion that the defendant actually committed an offense at least as serious as the crime to which he is pleading guilty." *State v. Trott*, 338 N.W.2d 248, 251-52 (Minn. 1983).

Knebel argues that the factual basis is not reliable because it was elicited through leading questions. The preferred method for developing a factual basis is through the defendant's own words. *Lussier v. State*, 821 N.W.2d 581, 589 (Minn. 2012). The use of leading questions, to which a defendant provides only "yes" or "no" responses, is discouraged in establishing a factual basis. *Ecker*, 524 N.W.2d at 717. But guilty pleas have not been deemed inaccurate solely because the factual bases were established through the use of leading questions. *See Raleigh*, 778 N.W.2d at 95-96 (stating that the factual basis was sufficient despite "its disfavored format"); *Barnslater v. State*, 805 N.W.2d 910, 914 (Minn. App. 2011) (stating that while the use of leading questions is "disfavored," it does not by itself invalidate a guilty plea). Thus, a factual basis may be sufficient despite the use of leading questions. *See Raleigh*, 778 N.W.2d at 95-96. And, here, the factual basis was sufficient.

A person is guilty of third-degree burglary when he "enters a building without consent and with intent to steal or commit any felony or gross misdemeanor while in the building, or enters a building without consent and steals or commits a felony or gross misdemeanor while in the building, either directly or as an accomplice." Minn. Stat.

5

§ 609.582, subd. 3 (2012). "A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2012). The phrase "intentionally aids" includes "two important and necessary principles: (1) that the defendant knew that his alleged accomplices were going to commit a crime, and (2) that the defendant intended his presence or actions to further the commission of that crime." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quotation omitted). Knebel claims that he never acknowledged knowing that his alleged accomplices were going to commit a crime or that he intended his actions to further the commission of the crime.

Knebel's attorney led him through questioning:

> Q: I'm going to take you back to . . . September the 15th of . . . 2013. It is true that you . . . had cased out and had taken some coactive steps toward burglarizing a warehouse or a storage facility?
> A: Yes.
> . . . .
> Q: [Y]ou gained entrance . . . to a facility that was adjacent to a warehouse . . . that had a variety of merchandise that was actually . . . the property of Anytime Fitness?
> A: Yes.
> Q: And you had . . . hatched a scheme whereby you would bust through the adjoining wall or the common wall between the unit that you gained access to and the unit that contained the various properties of Anytime Fitness?
> A: Yes.
> Q: And . . . you actually busted through the wall . . .
> A: Yes.
> Q: . . . between the facility that you had gained entrance to and the facility where the Anytime Fitness merchandise and property was stored?
> A: Yes.

Q: And you then consulted . . . with an individual who has been identified as a co-defendant or a coconspirator in that particular case?

A: Jimmy Zemlicka.

. . . .

Q: And so you advised and made Mr. Zemlicka . . . aware of the activities that you had engaged in to gain access to the Anytime Fitness property?

A: Yes.

Q: And . . . Mr. Zemlicka and or associates of Mr. Zemlicka then entered . . . through the hole that you had created in the wall, entered and stole various property and merchandise of Anytime Fitness?

A: Yes.

. . . .

Q: [Y]ou would acknowledge that neither you nor Mr. Zemlicka nor any coconspirators or associates . . . had any permission to take any of that property?

A: Yes.

Knebel acknowledged that he "cased out" and took "coactive steps" toward the burglary. He admitted that he "hatched a scheme" to "bust through" the wall, got through the wall, and gained entrance to the facility where property was stored. He admitted that he made Zemlicka aware of his activities to "gain access" to the property. Finally, he admitted that Zemlicka and/or his associates entered "through the hole that [Knebel] created in the wall" and stole property. These admissions establish that Knebel knew that his acts intended to further a crime. Even if Knebel did not state that "he knew" that Zemlicka would commit a crime, his admissions imply his guilt. *See Smith v. State*, 596 N.W.2d 661, 665 (Minn. App. 1999) (concluding that the facts were sufficient to infer Smith's guilt). The record before us supports a conclusion that the factual basis supporting Knebel's plea was accurate.

*Voluntary and intelligent*

In his pro se brief, Knebel argues that his plea was not voluntary or intelligent. First, these claims are arguably forfeited for lack of briefing. *State v. Krosch*, 642 N.W.2d 713, 719 (Minn. 2002) (deeming arguments set out in pro se supplemental brief waived because "brief contain[ed] no argument or citation to legal authority in support of the allegations"); *State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) (stating that assignment of error based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection), *aff'd*, 728 N.W.2d 243 (Minn. 2007). But the record also fails to support Knebel's claims.

*District court and defense counsel*

The voluntary requirement "insures that the guilty plea is not in response to improper pressures or inducements." *Carey v. State*, 765 N.W.2d 396, 400 (Minn. App. 2009) (quotation omitted), *review denied* (Minn. Aug. 11, 2009). Knebel argues that he was coerced and manipulated by the court to quickly resolve the matter. There is nothing in the record to show that the district court coerced Knebel into pleading guilty, and he points to no particular statement or action by the district court. His petition to enter his guilty plea indicates that "[n]o one—including . . . [the] judge . . . has threatened [or made any promises to] me . . . in order to obtain a plea of guilty from me." He also claims that his attorney "failed to explore any options other than a guilty plea." But he had a jury trial scheduled; thus, a jury trial was one option Knebel's attorney entertained.

8

*Charges against fiancée*

Knebel argues that he pleaded guilty in order to have charges against his fiancée dismissed. A plea agreement that includes leniency for an accomplice requires additional scrutiny. *Butala v. State*, 664 N.W.2d 333, 339 (Minn. 2003); *State v. Danh*, 516 N.W.2d 539, 542 (Minn. 1994). Because someone other than the defendant benefits from the plea agreement, there is a greater risk that the defendant will be unduly pressured to enter a guilty plea. *Butala*, 664 N.W.2d at 339. As a result, the state must disclose to the district court when a plea agreement includes a benefit to another individual, and the district court must conduct additional inquiry as to whether coercion exists. *Danh*, 516 N.W.2d at 542-43.

When Knebel pleaded guilty, the state agreed to dismiss charges against Kollos. This was disclosed before Knebel pleaded guilty. There was also inquiry regarding dismissal of the charges against Kollos:

> Q: Mr. Knebel, just for purposes of part of the plea negotiation here . . . one of the files that's being dismissed which is the case that actually we were prepared to proceed to trial on charging you with possession of theft or burglary tools, that case involved a co-defendant, correct?
> A: Yes.
> Q: Ms. Kollos?
> A: Yes.
> Q: And to the extent that that case is being dismissed against you and the expectation is that the charges against her will be dismissed as well, you for the record now are stating under oath that to the extent you had any involvement in anything that could be construed as being illegal activity, that Ms. Kollos had no knowledge of your activities?
> A: Yes.
> Q: She had no involvement in your activities?
> A: Yes.

9

It is difficult to see how Knebel was coerced into pleading guilty in order to secure leniency for his fiancée when the charges dismissed against her were related to charges that were dismissed against him. This was not a plea agreement negotiated for the sole benefit of his fiancée.

*Intelligent*

The intelligent requirement insures that the defendant understands the charges, his rights under the law, and the consequences of pleading guilty. *Carey*, 765 N.W.2d at 400.

### *Sentence*

Knebel argues that his guilty plea was not intelligent because he understood that in exchange for his guilty plea he would be required to complete treatment, not receive a prison sentence. The record shows that Knebel understood that he could be sentenced to prison.

The district court asked Knebel if he understood "that there's no guarantees" about his sentence. Knebel responded, "Yes, Your Honor." He also acknowledged his understanding that the presumption was that he was "going to get a prison sentence." Knebel also indicated that he understood that "if [he] screw[ed] up pending sentencing . . . [he was] going to prison." The district court required Knebel to follow the rules at Teen Challenge, but Knebel left the program. After he was apprehended, the district court stated, "the possibility that you would now be able to get [probation] was lost when you left Teen Challenge." Thus, Knebel was aware that he would likely receive a prison sentence.

### *General lack of understanding*

Knebel argues that he did not "fully understand" what occurred at the plea hearing because he has a learning disability, he was detoxing from methamphetamine, and he was unable to take his psychological medications. He asserts that he was never asked about his mental health or whether he was competent "to make these important decisions that would impact [his] life so greatly." But on his petition to enter his guilty plea, Knebel acknowledged that he had not recently been treated for a nervous or mental condition. And the record shows that Knebel participated as expected at his plea hearing—he responded appropriately to questions asked of him and asked questions when he expressed his lack of understanding. Based on the record before us, Knebel was mindful at his plea hearing.

### *Other attorney*

Knebel also argues that he did not have an opportunity to consult with Cascarano regarding the plea offer. But Knebel concedes that when he was asked: "Do you feel that there's any need for Mr. Cascarano to be here to be part of this plea negotiation," he replied: "No." Moreover, at a hearing, Knebel's attorney stated that Cascarano negotiated an agreement with the prosecutor to resolve all three matters together—a deal that involved Knebel going to prison for 30 months. The record before us shows that Cascarano's involvement, or lack thereof, had no bearing on Knebel's understanding of the plea agreement.

11

*Jail credit*

Finally, Knebel argues that his jail credit was miscalculated. But any issue with credit has nothing to do with Knebel's guilty plea. And at sentencing, the district court explained that because the sentence imposed was for the burglary offense, it could only give credit for time served since September 15, which was determined to be 183 days. Knebel provides no legal argument to determine whether the district court's calculation is incorrect. *See Wembley*, 712 N.W.2d at 795. The record before us supports a conclusion that Knebel's plea was valid.

**Affirmed.**