*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A22-1528**

State of Minnesota,
Respondent,

vs.

Dahir Abdow Noor,
Appellant.

**Filed January 16, 2024
Affirmed
Larson, Judge**

Hennepin County District Court
File No. 27-CR-21-8215

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Nicole Cornale, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Barry S. Edwards, Max A. Keller, Keller Law Offices, Minneapolis, Minnesota (for appellant)

        Considered and decided by Slieter, Presiding Judge; Larson, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**LARSON**, Judge

Appellant Dahir Abdow Noor appeals his conviction for two counts of criminal sexual conduct. Noor argues the district court (1) improperly admitted expert testimony; (2) permitted prosecutorial misconduct during opening statement and closing argument; and (3) excluded evidence that was necessary for Noor to present a complete defense. We affirm.

**FACTS**

Respondent State of Minnesota charged Noor with two counts of criminal sexual conduct after his stepdaughter, A.W., accused him of sexual abuse. *See* Minn. Stat. § 609.343, subd. 1(a), 1(h)(iii) (2020). A.W. alleged the abuse occurred when she was eight years old while she resided in an apartment with her mother, siblings, and Noor. The family contacted law enforcement after A.W. disclosed the alleged abuse to her sister. Law enforcement referred A.W.'s case to CornerHouse for a forensic interview. At trial, A.W. provided detailed testimony about her allegations, which largely tracked the substance of her interview with CornerHouse. After a five-day trial, a jury found Noor guilty of both counts. The district court sentenced Noor to 90 months in prison, the presumptive middle-of-the-box sentence.

Noor appeals.

**DECISION**

In this direct appeal, Noor challenges his convictions on three grounds. First, Noor argues the district court erred when it admitted unobjected-to expert testimony from the CornerHouse interviewer because the interviewer's testimony exceeded the limits of her expertise, lacked foundational reliability, and vouched for A.W.'s credibility. Second, Noor asserts the prosecutor committed unobjected-to misconduct during his opening statement and closing argument. Last, Noor argues the district court violated his constitutional right to present a complete defense when it did not allow him to offer evidence that he claims showed A.W.'s mother coached A.W. to lie about the abuse. We address each argument in turn.

**I.**

Noor first argues the district court improperly admitted the interviewer's expert testimony. Specifically, Noor challenges the interviewer's testimony about "episodic" and "script" memory. During her testimony, the interviewer described how children might recall episodes of sexual abuse and explained that "episodic" memory is memory of specific individual events, compared to "script" memory that generalizes a repeated occurrence. Noor also challenges the interviewer's testimony that children often delay reporting sexual abuse due to embarrassment or fear about the consequences of disclosure.

Admission of expert testimony is within the district court's "broad discretion," and we typically review the district court's decision for an abuse of discretion. *State v. Peterson*, 764 N.W.2d 816, 821 (Minn. 2009). However, because Noor did not object to the interviewer's testimony, we review for plain error. *See State v. Sontoya*, 788 N.W.2d

3

868, 872 (Minn. 2010) (citing Minn. R. Crim. P. 31.02). To show plain error, Noor must demonstrate "(1) an error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Mosley*, 853 N.W.2d 789, 797 (Minn. 2014). If these three prongs are met, we correct the error if it seriously impacts "the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotation omitted). If the appellant fails to meet one prong of the plain-error test, we do not consider the remaining prongs. *See id* at 798.

First, Noor argues the district court improperly determined the interviewer was qualified to testify that children may describe sexual abuse in the form of an "episodic" or "script" memory. Noor contends that "episodic" and "script" memory are scientific concepts and the interviewer lacked the qualifications to testify about these concepts because she is not a psychologist, psychiatrist, or licensed counselor.

Whether an expert is qualified is within the district court's sound discretion. *State v. Sandberg*, 406 N.W.2d 506, 511 (Minn. 1987). "[K]nowledge, skill, experience, training, or education" may qualify an expert to testify. Minn. R. Evid. 702. The record reflects the interviewer had the following qualifications. She earned a bachelor's degree and a master's degree in social work. Before CornerHouse, she was a therapist at a child-treatment facility. The interviewer also taught and attended numerous trainings on the CornerHouse-interview method and forensic interviews more generally. She testified that she had conducted over 1,309 interviews with CornerHouse. Because the interviewer had extensive qualifications to testify on the topic of child sex abuse, the district court did not plainly err when it allowed her to testify as an expert. *See, e.g.*, *State v. Davis*, 422 N.W.2d 296, 297-98 (Minn. App. 1988) (permitting the testimony on the "common characteristics

4

of sexually abused adolescents" from an expert with an undergraduate degree in elementary education and course work towards a doctorate in school psychology).

Second, Noor argues the interviewer's testimony about "episodic" and "script" memory lacked foundational reliability. Noor claims such testimony is "pseudo-science." Minnesota Rule of Evidence 702 "does not define, generally, what 'foundational reliability' means." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 165 (Minn. 2012). Nevertheless, to establish foundational reliability under rule 702, the district court must: (1) "analyze the proffered testimony in light of the purpose for which it is being offered" and (2) "consider the underlying reliability, consistency, and accuracy of the subject about which the expert is testifying." *Id.* at 167-68. Also, "the proponent of evidence . . . must show that it is reliable in that particular case." *Id.* at 168.

We do not discern any plain error in the foundational reliability for the interviewer's testimony about "episodic" and "script" memory.[1] The state established the interviewer's qualifications to testify regarding the emotional and psychological characteristics of children who experience sexual abuse. And contrary to the appellant's assertions, the interviewer testified using defined terms in her field to describe how children may remember events.

---

[1] Our recent nonprecedential opinions have also concluded that expert testimony about child sex abuse from experts with CornerHouse training was foundationally reliable. *Contreras v. State*, No. A22-0329, 2023 WL 18279, at *2, *5-6 (Minn. App. Jan. 3, 2023), *rev. denied* (Minn. Mar. 28, 2023); *State v. Shafer*, No. A20-0541, 2021 WL 1082338, at *3, *5-6 (Minn. App. Mar. 22, 2021), *rev. denied* (Minn. June 15, 2021).

Finally, Noor argues the interviewer violated the rule against an expert vouching for another witness's credibility. *See State v. Wembley*, 712 N.W.2d 783, 790-92 (Minn. App. 2006), *aff'd on other grounds*, 728 N.W.2d 243 (Minn. 2007). Noor points to the interviewer's testimony about "episodic" and "script" memory, and her testimony about delays in children reporting abuse.

Typically, a jury's "common experience affords sufficient basis" to assess witness credibility. *State v. Myers*, 359 N.W.2d 604, 609-10 (Minn. 1984). The risk that expert opinion might unduly influence a jury "mitigates against admission" even if it is helpful for deliberation. *Id.* at 610. However, leniency towards expert testimony that might inform a jury's credibility assessment is warranted when a witness's behavior and the nuances of how they might describe certain allegations fall outside a jury's common experience. *See id.* at 609-10. Although "[a]n expert witness may not testify as to the credibility of a specific witness, [they] may be able to testify generally as to certain psychological or physiological conditions that may affect credibility, if such testimony is beyond the knowledge and experience of an average jury." *State v. Reese*, 692 N.W.2d 736, 741 (Minn. 2005).

In *Myers*, a psychologist testified about the "general characteristics [of] sexually abused children." *Id.* at 607-09. To determine whether the district court erred in admitting the expert's testimony, the supreme court emphasized that, in the specific context of child sex abuse, a victim's behavior may fall outside juror's common experience because children tend to describe conduct as occurring over a vague time frame and may appear "uncertain or ambivalent." *Id.* at 610. The expert testimony was admissible because it

6

provided "relevant insight into the puzzling aspects of the child's conduct and demeanor." *Id.* In contrast, in *Wembley*, a CornerHouse interviewer vouched for a witness's credibility when she defined four criteria for evaluating child credibility and then described that the child-witness met those criteria. *See* 712 N.W.2d at 790-92.

Here, the interviewer's testimony falls into the type of permissible testimony *Myers* described: "[b]ackground data providing a relevant insight into the puzzling aspects of [a] child's conduct and demeanor." *See id.* By providing general information about how children might describe sexual abuse, and why they might wait to report it, the interviewer provided context transcending the jury's common experience about A.W.'s allegations. And unlike *Wembley*, the interviewer did not testify about criteria for assessing child-witness credibility and then explain that A.W. met those criteria. *See* 712 N.W.2d at 790-92. Thus, the interviewer did not violate the rule against an expert impermissibly testifying about witness credibility.

For these reasons, we conclude the district court did not plainly err when it allowed the interviewer's expert testimony.

## II.

Noor next argues the state committed prosecutorial misconduct during opening statement and closing argument. Noor asserts "[t]he misconduct included vouching for [A.W.], stating personal opinion as to the ultimate question of guilt, appealing to emotion, disparaging the defense, and misstating the testimony." Because Noor did not object, we apply the modified plain-error test specific to prosecutorial misconduct allegations. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). First, the defendant must demonstrate

7

"that the prosecutor's conduct constitutes an error that is plain." *Id.* If the defendant identifies a plain error, the state must demonstrate that there is "no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict." *Id.* (quotations omitted). Whether the state met its burden depends on "the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Davis*, 735 N.W.2d 674, 681-82 (Minn. 2007).

Noor points to the following remarks from opening statement and closing argument to assert that the state committed prosecutorial misconduct. First, Noor contends the prosecutor made conclusory assertions during opening statement that did not simply describe the facts to be proved, thereby undermining the role of the jury to evaluate credibility and discern the facts for itself. Specifically:

> [A.W.] was eight years old when her stepfather, [Noor], the Defendant, sexually abused her. It started in December of 2020 in their apartment, and it happened numerous times over the course of the next several months.

Second, Noor argues that the state inflamed the passions and prejudices of the jury when the prosecutor commented:

> Even when a victim is a child, they still have to take the stand. They still have to testify.
>
> Now, [A.W.] may be scared. She may be nervous. But she will be here, and she'll testify and tell you what happened to her.

Third, Noor argues the state invited the jury to place itself in the alleged victim's shoes and invented facts when the prosecutor said:

8

> [A.W.] is old enough to know to a certain extent that what happened was wrong or inappropriate. But [A.W.] doesn't know how to deal with that, doesn't know how to deal with it like an adult would. But can you imagine for a moment what is going on inside the 8-year-old [A.W.'s] mind when this is happening.
>
> She may not have the confidence or persistence to tell her mother about what was happening like she does now. . . .
>
> It is likely that [A.W.] saw her mother – how hard she was working, how stressed she was, how overburdened she was cooking or doing something else. . . .
>
> . . . Maybe [A.W.] doesn't have the words to communicate fully what is going on to her, the fear of not being believed, wanting to forget what happened because it was uncomfortable.

Lastly, Noor argues that the state denigrated the defense when the prosecutor explained that Noor's closing argument would likely focus on "minor inconsistencies" in A.W.'s testimony and then stated:

> [I]magine for a moment what the defense's argument would be if [A.W.] was perfectly consistent. What would their argument be? That she memorized or rehearsed this story. That she must have seen it before and is remembering the details because of that.

Assuming, without deciding, that these statements amounted to plain error, we conclude the state met its burden to show there was "no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict." *See Ramey*, 721 N.W.2d at 302 (quotations omitted).

Here, the state presented a robust case against Noor, including A.W.'s testimony in which she detailed the abuse and the interviewer's expert testimony in which the expert

9

provided further context for the jury to evaluate A.W.'s testimony. The district court also ameliorated any impact the above statements had on the verdict when it instructed the jury before opening statements that "what the attorneys say is not evidence." And the district court again instructed the jury prior to closing arguments that "the arguments or other remarks of an attorney are not evidence." Furthermore, the portions of the state's opening statement and closing argument that Noor contests represented relatively small portions of those remarks as a whole. Therefore, the state satisfied its burden to show that any alleged plain errors during opening statement and closing argument did not have a significant effect on the jury's verdict.

## III.

Noor finally argues the district court abused its discretion when it excluded evidence that A.W.'s mother had previously threatened or removed men from her home. Appellate courts review evidentiary rulings for an abuse of discretion. *State v. Larson*, 787 N.W.2d 592, 597 (Minn. 2010). Under Minnesota Rule of Evidence 402, "[e]vidence which is not relevant is not admissible." And even relevant evidence can "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. R. Evid. 403.

At trial, one of Noor's defenses was that A.W.'s mother had coached A.W. to lie about the allegations. To support this defense, Noor's counsel proposed using a transcript from a YouTube video in which A.W.'s mother allegedly described the fathers of her children as "losers." Noor's counsel also stated that Noor would testify that he heard a

10

rumor that A.W.'s mother had driven a past partner out of the country with threats that she would accuse him of sexual assault.

Before A.W.'s mother testified, the state moved for the district court to preclude this evidence on the grounds that it was irrelevant and unfairly prejudicial. The district court granted the state's motion, determining that Noor's counsel could not inquire into A.W.'s mother removing partners or threating to remove them. But the district court clearly indicated "[t]o the extent that the defense wishes to inquire of the victim's mother that she told her daughter not to smile or laugh during the interview in support of [his] theory that she coached her, I will permit that on cross-examination."

Noor contends that by excluding the evidence, the district court deprived him of his due-process right to have a meaningful opportunity to present a complete defense. Noor is correct that defendants have a "constitutional right to present a complete defense." *State v. Atkinson*, 774 N.W.2d 584, 589 (Minn. 2009). But the evidence the defense presents must still satisfy the rules of evidence. *See* Minn. R. Evid. 1101(a) (stating that the Minnesota Rules of Evidence, subject to certain exceptions, "apply to all actions and proceedings in the courts of this state").

Here, the district court did not abuse its discretion when it excluded the evidence. First, it is not entirely clear how the YouTube video transcript regarding A.W.'s mother not trusting past partners was relevant to Noor's theory that A.W. was coached. *See* Minn. R. Evid. 402. And the probative value of Noor's second- or third-hand knowledge that A.W.'s mother may have driven a past partner out of the country with threats that she would

11

accuse him of sexual assault did not outweigh any unfair prejudice likely to result from such an unsubstantiated allegation.[2]  *See* Minn. R. Evid. 403.

For these reasons, the district court did not abuse its discretion when it excluded evidence that A.W.'s mother had threatened or removed men from her home.

**Affirmed.**

---

[2] The state did not raise a hearsay objection.  *See* Minn. R. Evid. 801 (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"); Minn. R. Evid. 802 (explaining that hearsay is inadmissible "except as provided by these rules or by other rules prescribed by the Supreme Court or by the Legislature").